FILED
U.S. DISTRICT COURT

2011 AUG 17 P 2: 37

DISTRICT OF UTAH
_____
DEPUTY CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

TIMOTHY J. CUNNINGHAM,

        Plaintiff,

        v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

)
)
)
)
)
)
)
)
)
)

Case No.  2:10-CV-01216-BSJ

[~~PROPOSED~~] ORDER

Plaintiff filed suit seeking judicial review of the decision of the Commissioner denying

his applications for disability insurance benefits and supplemental security income pursuant to

Titles II and XVI of the Social Security Act, respectively. *See* 42 U.S.C. §§ 401-33, 1381-

1383f.[1] After reviewing the entire case record, the parties' briefs, and arguments presented at a

hearing held on August 5, 2011, the undersigned **AFFIRMS** the decision of the Commissioner.

### Procedural History

Plaintiff filed applications for disability benefits in November 2005 (Tr. 71-80, 496-501).

His applications were denied (Tr. 47-56).  Plaintiff requested a hearing before an administrative

law judge (ALJ), which was held in January 2007 (Tr. 502-27).  The ALJ issued a decision in

May 2007, finding that Plaintiff was not disabled within the meaning of the Act (Tr. 15-31).  The

agency's Appeals Council declined Plaintiff's request for review (Tr. 574).  Plaintiff sought

judicial review and, in July 2007, filed another application for disability benefits (Tr. 637).

In August 2008, the district court granted the Commissioner's request for voluntary

remand (Tr. 585).  The Appeals Council remanded the case for further administrative

proceedings and consolidated the case with Plaintiff's second application.

---

[1]References to the U.S.C. (United States Code) and Code of Federal Regulations (C.F.R.) are to
the 2010 editions.

The ALJ held a supplemental hearing in April 2009 (Tr. 892-930). The ALJ issued a decision on May 19, 2009 (Tr. 546-73). The ALJ found that Plaintiff's impairments limited him to a reduced range of unskilled work requiring no more than sedentary to light exertional activities; that Plaintiff could no longer perform his past relevant work, which was semi-skilled and required at least light exertion; and that Plaintiff's vocational factors (age, education, past work, and functional capacity) did not preclude him from performing other jobs (Tr. 553-54, 570-72). The ALJ concluded that Plaintiff was not disabled within the meaning of the Act.

The Appeals Council declined to exercise jurisdiction (Tr. 528). Plaintiff sought judicial review, and this appeal followed. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).[2]

## Statement of Relevant Law

I.     **The Definition of Disability Within the Meaning of the Act.**

An individual is disabled within the meaning of the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, at a sufficient level of severity for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

II.    **The Process for Determining Disability Within the Meaning of the Act.**

To determine whether a claimant is disabled within the meaning of the Act, Social Security regulations require the adjudicator to consider whether, during the alleged period of disability, a disability claimant: (1) engaged in substantial gainful activity; (2) had a severe

---

[2]At oral argument on August 5, 2011, Plaintiff's counsel advised the Court that Plaintiff was found disabled and awarded supplemental security income based upon a subsequent application he filed in May 2009. That decision relates to a later time period and is not before this Court.

impairment; (3) had a condition that met or equaled the severity of a listed impairment;[3] (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4). If a decision regarding a claimant's disability can be reached at any step in the process, further evaluation is unnecessary. *See id.*

## Statement of Facts

Plaintiff, born in 1960, completed the eleventh grade and worked in the past as a janitor and as a customer service representative (Tr. 71, 82-83, 89-92). Plaintiff alleged that he became disabled in June 2005, when he was 45 years old (Tr. 71, 506, 571).

## I.     Summary of Medical Evidence.

Plaintiff's medical history prior to his alleged onset date includes treatment for several back injuries and for complaints of depression and anxiety (Tr. 161, 170-76, 189-92, 215-23, 234-35, 249-61, 275-76, 279-89, 415-18, 484).

On June 23, 2005, Plaintiff's alleged onset of disability date and the date his mother passed away, he sought care for depressive symptoms and was placed on a suicide watch (Tr. 312-13). Treatment notes through 2005 show that he was treated with medication and counseling for depression and symptoms of anxiety (Tr. 296-308, 322-25, 335, 477). He was also assessed with a possible adjustment disorder with mixed anxiety and depression, possible substance abuse, and malingering (Tr. 322-25, 478-79). Plaintiff stated that he was depressed and anxious because of his loss of both parents and because he was unemployed (Tr. 322). He

---

[3]The Listings, 20 C.F.R. pt. 404, subpt. P, app. 1, describe impairments that are considered severe enough to be presumptively disabling. *See* 20 C.F.R. § 404.1525.

stated that his dog was the only family he had left (Tr. 413). A licensed clinical social worker assessed Plaintiff with a Global Assessment of Functioning (GAF) score of 51[4] (Tr. 414).

In January 2006, Plaintiff underwent a psychiatric evaluation (Tr. 409-11). He complained of depressive symptoms; post traumatic stress disorder (PTSD); poor appetite with weight loss, problems with concentration and memory; insomnia; and fatigue (Tr. 409). He was assessed with major depressive disorder, PTSD, and bereavement (Tr. 411). Plaintiff attended three individual psychotherapy treatment sessions in March 2006 (Tr. 405-06).

From January through October 2006, Curtis Andersen, M.D., treated Plaintiff on six occasions for depression, low back pain, and PTSD (Tr. 417, 447-48, 452, 464-65, 474-75). In July 2006, Dr. Andersen stated his opinion that Plaintiff had moderate limitations in the ability to understand, remember, and carry out short and simple instructions; repeated (four or more) episodes of decompensation; and marked or extreme limitations in most areas of mental functioning (Tr. 433-34). In September 2006, Dr. Andersen opined that Plaintiff's mental impairments met the requirements of Listing 12.04 (affective disorders) and 12.06 (anxiety-related disorders) (Tr. 435-39). In October 2006, Dr. Andersen stated that Plaintiff was "ok" to ride a bus and that he needed his pet dog for therapeutic purposes related to his emotional illnesses (severe anxiety and depression) (Tr. 446).

In February 2007, Elizabeth Allen, Ph.D., performed a consultative psychological evaluation of Plaintiff (Tr. 491-95). Plaintiff reported that he was homeless; unemployed, distressed, and depressed; his symptoms worsened after his parents died; and that he was "80% [disabled because of] depression and 20 percent [because of] the back" (Tr. 491). Dr. Allen found that Plaintiff was cooperative, attentive, and oriented, with cognizant and clear

---

[4]A GAF score of 51 to 60 indicates moderate limitations in social and occupational functioning. *See* American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders* 32 (Text Revision 4th ed. 2000) (*DSM-IV-TR*).

consciousness (Tr. 493). She found that Plaintiff had age appropriate and adequate thinking; normal speech, affect, and comprehension; average to below average memory; and below average concentration, attention, fund of knowledge, and abstract reasoning (Tr. 493-94). Dr. Allen found that Plaintiff was able to understand, remember and carry out simple one and two-step job instructions (Tr. 494). She assessed Plaintiff with major depressive disorder, bereavement, and a GAF score of 55-60 (Tr. 495).

In February 2007 Dr. Allen completed a medical source statement of Plaintiff's ability to do work-related mental activities (Tr. 488-90). Dr. Allen stated that Plaintiff was slightly limited in his ability to understand, remember, and carry out short, simple instructions; to make judgments on simple work-related decisions; to interact appropriately with the public, supervisors, and coworkers; and to respond to changes in a routine work setting (Tr. 488-89). Dr. Allen opined that Plaintiff was moderately limited in the in the ability to understand, remember, and carry out detailed instructions, and to respond appropriately to work pressures in a usual work setting (Tr. 489).

## II. Summary of Administrative Hearing Testimony

Plaintiff testified that:

- his activities included watching television, taking care of his personal needs; using public transportation, and caring for his dog;

- he experienced constant depression and stress; relationship barriers; suicidal thoughts; fear of dying; and fear of his brother, who was recently released from prison;

- because of back pain and sciatica, he changed positions every 15 minutes throughout the day and was limited in his ability sit, stand, or walk for long periods of time; and

- he lived in subsidized housing, but he had been homeless in the past.

(Tr. 896-919).

The ALJ received testimony from a vocational expert who stated that an individual of Plaintiff's age, with his education, work history, and the residual functional capacity (RFC)

5

ultimately assessed by the ALJ, could perform jobs such as house sitter, surveillance system monitor, and touch-up screener (Tr. 910-28). The vocational expert testified that an individual with the limitations Plaintiff alleged would not be able to perform any work (Tr. 925-26).

## III. The ALJ's Decision

The ALJ found that:

- Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability date (Tr. 549);

- Plaintiff had severe impairments (mild scoliosis and spondylosis of the lumbar spine, chronic obstructive pulmonary disease, an April 2007 left wrist injury with reported residual pain; a mood disorder; and substance abuse) (Tr. 549);

- Plaintiff's impairments did not meet or equal the requirements of any listed impairment in 20 C.F.R. pt. 404, subpt. P, app. 1 (Tr. 549);

- Plaintiff retained the RFC to perform a range of unskilled work requiring a limited range of sedentary to light exertional activities (Tr. 553);

- Plaintiff's RFC precluded him from performing his past relevant work, which was semi-skilled and required light exertion (Tr. 570); and

- Plaintiff could perform other jobs that exist in significant numbers (Tr. 570).

The ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. 572-73).

### Standard of Review

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). The Court may neither "reweigh the evidence [n]or substitute [its] judgment for the [ALJ's]." *Id.* (citation omitted). Where the evidence as a whole can support either the agency's decision or an award of benefits, the agency's decision must be affirmed. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

I.      **The ALJ's decision was supported by substantial evidence and free of legal error.**

The "final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"); *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1992). When making that determination, the ALJ followed the sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). On appeal, Plaintiff challenges the ALJ's findings at steps two through five (severity of impairments, listings, RFC, and ability to perform work existing in significant numbers). As set forth below, the undersigned finds that these claims lack merit.

A.      **At step two, the ALJ considered all of Plaintiff's mental impairments.**

Although step two requires a "*de minimis*" showing of impairment, *id.*, "the claimant must show more than the mere presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). A claimant must establish a severe impairment that significantly limits a claimant's ability to perform basic work activities.[5] *See Branum v. Barnhart*, 385 F.3d 1268, 1272-73 (10th Cir. 2004) (citing 20 C.F.R. § 404.1521). The limited purpose of the step-two inquiry is to screen out those claimants who could not possibly qualify as disabled because they do not have a severe impairment. *See Bowen v. Yuckert*, 482 U.S. 137, 156 (1987) (O'Connor, J., concurring) (cited in *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004)). If a severe impairment exists at step two, the combined effect of all impairments will be considered at subsequent steps, without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Branum*, 385 F.3d at 1272-73 (citing 20 C.F.R. § 404.1523).

---

[5]As relevant here, basic work activities include understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to usual work situations; and dealing with changes in a routine work setting. *See* 20 C.F.R. § 404.1521 (a) & (b).

Here, the ALJ found at step two that Plaintiff had a severe mood disorder (Tr. 549). The ALJ did not find that Plaintiff had a severe anxiety disorder. However, he properly considered evidence of Plaintiff's anxiety; proceeded with the sequential evaluation; and assessed limitations flowing from Plaintiff's medically determinable mental impairments, both severe and nonsevere (Tr. 549-69). Because the ALJ did not screen out Plaintiff's claim at step two and instead considered all of his impairments beyond step two, this Court need not reach the question whether the ALJ erred by not designating Plaintiff's anxiety disorder as an additional severe mental impairment. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (any step two error would be harmless, at most, where "the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence"); *Oldham v. Astrue*, 509 F.3d 1254, 1267-57 (10th Cir. 2007) ("We can easily dispose of . . . arguments[ ] which relate to the severity of [claimant's] impairments. The ALJ . . . made an explicit finding that [claimant] suffered from severe impairments. That was all the ALJ was required to do in that regard." In sum, the ALJ did not commit reversible error at step two in assessing Plaintiff's severe impairments.

**B.      Substantial evidence supports the ALJ's step three finding that Plaintiff's impairments did not meet or equal a listed impairment.**

A claimant is disabled at step three if his impairment, or combination of impairments, meets or equals the requirements of an impairment found in the "Listing of Impairments" at 20 C.F.R. pt. 404, subpt. P, app. 1. *See* 20 C.F.R. § 404.1526(b)(1)-(3). To meet a listing, a claimant must "meet *all* the specified medical criteria" for the listing. *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990) (emphasis in original). A claimant must provide specific medical findings that support each of the requisite criteria for the listing. *See Lax,* 489 F.3d at 1085. A claimant must also show that the medical criteria were met for a period of 12 continuous months. The

ALJ in this case did not err in finding that Plaintiff's condition did not meet Listing 12.04 or 12.06.

To meet Listing 12.04 (affective disorders) or 12.06 (anxiety-related disorders), a claimant must meet the specific requirements of the listing's "A" criteria *and* establish the required level of severity, either by establishing at least marked limitations in two of the four "B" criteria or by establishing the "C" criteria.[6] *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04 and 12.06. The evidence did not establish that Plaintiff's condition met the requisite level of severity (Tr. 548, 551-53).

Here, the ALJ considered the "B" criteria and explained the basis for his finding that Plaintiff did not show the requisite level of severity in that he had mild limitations in activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation (Tr. 550-53). The ALJ discussed evidence that Plaintiff sought treatment from Valley Mental Health Center on the few occasions he was in a crisis, but even then his treatment notes and psychological evaluations showed no more than moderate limitations, at most, and no reported episodes of decompensation (Tr. 404-18). The ALJ considered Dr. Allen's report of examination, in which she found that Plaintiff had mild to no more than moderate limitations in functioning (Tr. 488-95). The ALJ also considered the mild and moderate limitations assessed by State agency medical sources who reviewed the medical evidence (Tr. 390-403, 798-810). The ALJ discussed

---

[6]The "B" criteria measures the ability to perform activities of daily living and to maintain social functioning, concentration, persistence, or pace; and whether a claimant experiences episodes of decompensation, which are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(4). As relevant here, the "C" criteria requires, *inter alia*, repeated episodes of decompensation, each of extended duration, or a current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04(C), 12.06(C).

evidence that Plaintiff denied depressive symptoms; that he felt "a little bit of anxiety" which was "normal" for him; and that his mental functioning responded favorably to treatment (Tr. 405, 729). The ALJ noted that Plaintiff was able to satisfy his needs, such as caring for his personal needs; using public transportation and housing; attending medical appointments; ordering prescriptions; consulting with his attorney; and coordinating, communicating, and completing forms necessary for these types of these activities (Tr. 561-62). This evidence and the ALJ's reasons for finding that Plaintiff did not meet the listings' "B" criteria support a finding that Plaintiff also failed to establish that he met the listings' "C" criteria (Tr. 561-62). Plaintiff relies primarily on Dr. Andersen's opinion that he met the Part B and Part C criteria of Listings 12.04 and 12.06 (Plaintiff's Br., pp. 18-22). As discussed below, however, the ALJ properly considered and rejected Dr. Andersen's opinions.

### C. Substantial evidence supports the ALJ's step four assessment of Plaintiff's credibility, RFC, and medical source opinions.

Assessments of a claimant's credibility and RFC are for the ALJ to make, based upon all record evidence before him. *See Talley v. Sullivan,* 908 F.2d 585, 587 (10th Cir. 1990); 20 C.F.R. §§ 404.1529(c) and 1546. The ALJ considered the entire record and thoroughly discussed the evidence (Tr. 549-70).

Objective medical findings provided substantial support for the ALJ's finding that Plaintiff, despite his impairments, could perform a range of unskilled work (Tr. 491-95). *See Wall v. Astrue,* 561 F.3d 1048, 1067 (10th Cir. 2009) (the ALJ "quite reasonably" considers the objective medical evidence of record). When assessing Plaintiff's credibility, the ALJ properly considered numerous inconsistencies between Plaintiff's allegations and other record evidence, including his level of activities (Tr. 553-66). *See Eggleston v. Bowen,* 851 F.2d 1244, 1247 (10th Cir. 1988) (the ALJ considers inconsistencies between a claimant's statements and other evidence

10

in the record); *Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992) (evidence of relatively normal activities that are inconsistent with a claimant's allegations may be considered when assessing credibility and RFC). The ALJ also considered evidence that Plaintiff exaggerated his symptoms, engaged in drug-seeking behavior; tested positive for amphetamines, benzodiazepines, opiates, and cannabis; and was not always complaint with treatment recommendations (Tr. 562-65). This evidence supported the ALJ's finding that Plaintiff's allegations were not fully credible and that his mental functioning did not preclude him from performing a range of unskilled work activities. The ALJ also considered the entire record when weighing medical source opinions.

Medical source opinions on issues reserved to the Commissioner – such as whether a claimant is "disabled" or unable to work – are not entitled to controlling weight or special significance. *See* 20 C.F.R. § 404.1527(e). Thus, that portion of Dr. Andersen's opinion that Plaintiff could not work was not entitled to any weight, nor did it require an explanation by the ALJ (Tr. 567). *Id.*

A medical source may offer an opinion which reflects a judgment about the nature and severity of a claimant's impairments, including the claimant's symptoms, diagnosis and prognosis, and any physical or mental restrictions. *Castellano,* 26 F.3d at 1029 (citing 20 C.F.R. § 404.1527(a)(2)). However, "the ALJ, not a physician, is charged with determining a claimant's residual functional capacity." *Howard v. Barnhart,* 379 F.3d 945, 949 (10th Cir. 2004).

The ALJ is also responsible for weighing the evidence and resolving any conflicts. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971). When doing so, the ALJ must explain the weight given to medical source opinions. *See Watkins v. Barnhart*, 350 F.3d 1297 (10th Cir. 2003) (citing 20 C.F.R. § 404.1527). Factors considered include the treatment relationship and frequency of examinations, the degree to which a physician's opinion is supported by relevant evidence, and the consistency between the opinion and the record as a whole. *Id.; see also*

*Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (the opinion of a treating physician may be rejected if it is unsupported by other evidence of record or based upon a claimant's subjective assertions rather than objective medical evidence). The ALJ provided specific and legitimate reasons for rejecting those portions of the opinions submitted from Dr. Andersen that would preclude Plaintiff from performing the limited range of unskilled sedentary and light work activities ultimately assessed by the ALJ (Tr. 552-53, 566-58).

The ALJ did not err in giving little weight to Dr. Andersen's opinion that Plaintiff had marked and extreme mental limitations (Tr. 552-53, 566-68). As the ALJ noted, Dr. Andersen's opinions were not consistent with other record evidence, including treatment notes from Valley Mental Health, Dr. Allen's psychological evaluation report, and the reports of reviewing medical psychologists (Tr. 404-18, 491-95, 552, 567-68). The ALJ noted that Dr. Andersen did not specialize in psychology, that his examinations of Plaintiff did not include mental status evaluations, but that Dr. Andersen did state that Plaintiff was doing well on medications for stress anxiety disorder (Tr. 551-52). The ALJ also noted evidence that Dr. Andersen (who treated Plaintiff on six occasions from January through October 2006) (Tr. 417, 447-48, 452, 464-65, 474-75)), did not appear to be familiar with other information in Plaintiff's case record (Tr. 567). Furthermore, no doctor's opinion or testimony is alone conclusive on this issue, and the ALJ's RFC assessment need not match with precision to any medical source opinion. *See* Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-4 ("a medical source statement must not be equated with the administrative finding known as the RFC assessment"). For all of these reasons, I find that the ALJ did not err in giving little weight to Dr. Andersen's opinions.

An ALJ may rely on opinions of examining physicians that are based on objective findings and consistent with other evidence. *See Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1498 (10th Cir. 1992). As the ALJ discussed (Tr. 552, 568), Dr. Allen examined Plaintiff only once, but her opinion - - that Plaintiff had none to no more than moderate

limitations in mental functioning and could understand, remember and carry out short simple instructions - - was consistent and supported by other evidence of record (Tr. 491-95, 568). The ALJ discussed the evidence he relied on in making that finding, including Plaintiff's medical records, testimony, and level of activities (Tr. 554-68).

An ALJ may consider the opinion of a nonexamining medical expert whose opinion is consistent with other evidence. *See Perales*, 402 U.S. 389 at 408 (1971); *see also* 20 C.F.R. § 404.1527(f)(2) (findings by reviewing State agency medical consultants regarding the nature and severity of an individual's impairments are treated as expert opinions and entitled to weight). The ALJ considered assessments from State agency medical sources who reviewed the evidence and opined that Plaintiff had mild to moderate limitations in mental functioning (Tr. 390-402, 550-51, 568-70, 798-810). The ALJ rejected those portions of the State agency assessments that would preclude Plaintiff from performing the limited range of unskilled work assessed by the ALJ (Tr. 569-70). The ALJ explained that these opinions were based on only part of the record and did not address all of the evidence available to the ALJ (Tr. 569-70)[7].

The ALJ was not required to provide a more detailed analysis of the medical source opinions discussed above. *See Oldham*, 509 F.3d at 1258-59 (stating that the ALJ is not required to "apply expressly" all relevant factors in deciding what weight to give a medical opinion) (citing *Watkins*, 350 F.3d at 1300 and 20 C.F.R. § 404.1527(d)). The ALJ's decision need only

---

[7]Plaintiff suggests in a footnote (Plaintiff's Brief, p. 31, footnote 10) that the ALJ did not properly reject State agency assessments because those assessments did not indicate to what extent Plaintiff's drug abuse contributed to the assessed limitations. However, the ALJ found Plaintiff's drug abuse was severe, but not disabling. Thus, it was a proper factor to consider without separating the effects of Plaintiff's drug abuse from his mental impairments. *See* 20 C.F.R. §§ 404.1535 (effects of drug and alcohol abuse are separated only if found to be a "contributing factor material to a finding of disability"; §§ 404. 1545 and 1546 (the ALJ considers all evidence when assessing RFC). Furthermore, the ALJ did not rely exclusively on evidence of Plaintiff's drug abuse when rejecting those portions of the State agency assessment that would preclude Plaintiff from performing a limited range of unskilled work (Tr. 568-70).

be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins,* 350 F.3d at 1300. The ALJ's decision in this case is more than sufficiently explicit as to this issue. Accordingly, because the ALJ considered all record evidence and sufficiently explained his reasons for the weight he assigned to medical source opinions, that proper determination is affirmed.

### D. Substantial evidence supports the ALJ's step five finding that Plaintiff could perform job existing in significant numbers.

At step five, when determining whether a claimant can perform jobs existing in significant numbers, an ALJ can rely on vocational expert testimony. *See Trimiar v. Sullivan,* 966 F.2d 1326, 1329 (10th Cir. 1992). The ALJ relied on vocational expert testimony, in response to a question that accurately portrayed Plaintiff's vocational factors, that Plaintiff could perform jobs existing in significant numbers, such as touch up screener, house sitter, and surveillance systems monitor (Tr. 571-72, 920-29).

The ALJ was not required to include limitations that are not borne out by the record as a whole, and he was not required to accept testimony in response to questions that were not accepted by the ALJ or incorporated in Plaintiff's RFC. *See Qualls v. Apfel,* 206 F.3d 1368, 1373 (10th Cir. 2000) (finding no error when the ALJ relied upon a hypothetical question to the vocational expert that included all the limitations the ALJ ultimately included in his RFC assessment); *Gay v. Sullivan,* 986 F.2d 1336, 1341 (10th Cir. 1993) (when the findings regarding a claimant's impairment are adequately reflected in the ALJ's hypothetical questions to the vocational expert, the vocational expert's testimony constitutes substantial evidence to support the ALJ's related determination); *Jordan v. Heckler,* 835 F.2d 1314, 1317 (10th Cir.1987) (the ALJ is only required to ask hypothetical questions encompassing impairments that find support in the record).

**ORDER**

The Commissioner applied the correct legal standards, and his decision is supported by substantial evidence. Accordingly, the decision of the Commissioner is **AFFIRMED**. Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the United States Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296-302 (1993).

DATED this 17 day of August, 2011.

BY THE COURT:

BRUCE S. JENKINS
United States District Judge

Approved as to form:
/s/ John J. Borsos, Attorney for Plaintiff
Date: August 15, 2011